UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

DOTTIE J. NEW and
RALPH NEW,

      Plaintiffs,

v.                                           CIVIL ACTION NO. 5:23-cv-00628

JUSTIN L. FARIS and
SUMMERS COUNTY SHERIFF'S DEPT. and
SUMMERS COUNTY COMMISSION and
JOHN DOES,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendants' Justin L. Faris, Summers County Commission, and Summers County Sheriff's Department Motion to Dismiss [ECF 11], filed February 21, 2024. Plaintiffs Dottie J. New and Ralph New (collectively "the News") responded in opposition [ECF 13] on March 6, 2024, to which Defendants replied [ECF 14] on March 13, 2024.

**I.**

Sheriff Faris and Jane Does[1] (collectively "Defendants") are police officers believed to be employed by either the Summers County Sheriff's Department and County Commission or a federal task force created to assist local law enforcement.[2] [ECF 1 ¶¶ 2, 12]. On

---

[1] The News assert discovery is necessary to ascertain the identities of the Doe Defendants inasmuch as they were wearing masks during the incident and were unidentifiable.

[2] Despite naming the Summers County Sheriff's Department and Summers County Commission as Defendants, the News concede in their briefing they "have not asserted claims" against either entity and only identified them in the Complaint "for the purpose of providing clarity

September 23, 2021, Defendants, acting under color of law, forcibly entered the New residence by breaking the door. [*Id*. ¶ 2]. Upon entry, Defendants broke a lock on the bedroom where Ms. New was sleeping. [*Id*. ¶ 1]. She was forced out of bed by Defendants while wearing only a nightgown and denied access to her robe. [*Id*. ¶ 6]. Mr. New was on the toilet when Defendants entered the residence, where he "was held at gunpoint and repeatedly threatened[.]" [*Id*.]. The News allege Defendants employed excessive and unreasonable force by pointing their weapons at them and continuously threatening them with physical harm and arrest. [*Id*. ¶¶ 6, 7, 12]. Defendants allegedly destroyed the News' household items and left "the house and furniture in shambles." [*Id*. ¶ 6]. The News further allege Defendants lacked "a search warrant, or an arrest warrant for anyone residing in the home or any other basis to enter [their] residence or to detain [them]." [*Id*. ¶ 1].

The News assert their unlawful detention by Defendants, Defendants' use of excessive and unreasonable force, and Defendants' illegal entry into their residence all run afoul of the Fourth Amendment in violation of 42 U.S.C. § 1983. To the extent Defendants were acting as agents of a federal task force, the News alternatively bring the same Fourth Amendment claims pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

On February 21, 2024, Sheriff Faris moved to dismiss. He first contends dismissal is warranted inasmuch as the News have engaged in "impermissible group pleading" and have thus failed to differentiate between the conduct allegedly committed by him and the Doe Defendants. [ECF 12 at 6-9]. He asserts this style of pleading "is particularly troublesome" respecting the excessive force claim inasmuch as "Plaintiffs fail to identify anyone actually responsible for the

---

regarding the employer of" Sheriff Faris and the Doe Defendants. [ECF 13 at 1]. Accordingly, the Summers County Sheriff's Department and Summers County Commission are **DISMISSED**. The Court need not address Defendants' substantive contentions respecting these entities.

2

alleged harms." [*Id*. at 8]. Assuming *arguendo* the News have properly pled their claims, Sheriff Faris asserts dismissal is yet warranted on the basis of qualified immunity. Respecting the alleged unlawful entry, Sheriff Faris contends he had authority to enter the New residence inasmuch as the Circuit Court of Raleigh County had issued a capias for the News' son, Ralph Shaun New, whom officers reasonably believed resided at the home. Respecting the alleged unlawful detention, Sheriff Faris asserts the authority to enter the residence to execute the capias likewise permitted officers "to detain not only the subject of the warrant, but also anyone else found in the residence so the arrest could be conducted safely." [ECF 12 as 13]. Respecting the alleged use of excessive force, Sheriff Faris contends the pointing of weapons and use of threats was constitutionally permissible under the circumstances and existing authority.

Should the Court reject Sheriff Faris' grounds for dismissal, he alternatively moves for a more definite statement pursuant to *Federal Rule of Civil Procedure* 12(e). Respecting the 42 U.S.C. § 1983 claims, he asserts the group pleading nature of the Complaint prevents him from determining his alleged actions from the Doe Defendants. As to the alleged *Bivens* claims, he asserts the News "present no facts establishing [he] was acting as part of a federal task force" but merely conclude he was doing so. While Sheriff Faris recognizes a law enforcement officer may be both a local and federal officer, he maintains "an officer cannot be acting as both simultaneously at the time of the conduct at issue." [ECF 12 at 16]. He thus requests the News "be required to submit a more definite statement outlining their claims, including who is alleged to have done what, and whether [they] intend to pursue this matter as a § 1983 or *Bivens* action against [him]." [*Id*.].

The News reject Sheriff Faris' assertions and maintain his conduct is violative of the Fourth Amendment. Specifically, the News contend their son did not live at their residence,

nor did Sheriff Faris have probable cause to believe he did. The News hold firm that Sheriff Faris entered their residence absent a warrant for anyone living therein which, if taken as true, supports their claims. The News further contend dismissal of either their Section 1983 or *Bivens* claim at this stage is unwarranted inasmuch as discovery is necessary to determine which claim to pursue.

## II.

*A.*    *Governing Standards*

### 1.    Rule 12(b)(6)

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. North Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)

4

(internal quotation marks and citation omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly* 550 U.S. at 570. The Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### 2. Rule 12(e)

Rule 12(e) permits a party to seek a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e), however, must be read in tandem with the requirements of Rule 8(a) as outlined above. *Student A v. Liberty University, Inc.*, 602 F. Supp. 3d 901, 918 (W.D. Va. 2022) (citing *Hodgson v. Va. Bapt. Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973)). "[C]ourts have held that a motion under Rule 12(e) is designed to strike at unintelligibility rather than simple want of detail[.]" *Sherrer v. Fairhaven OPCO, LLC*, 2022 WL 3570347, at *2 (S.D.W. Va. Aug. 18, 2022) (internal quotations omitted) (collecting cases). At bottom, such motions "will be granted only when the complaint is so vague and ambiguous that the defendant cannot frame a responsive pleading." *Id*.

"As a result, 'the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small.'" *Id*. (quoting 5C Charles Alan Wright & Arthur R. Miller, 5C Federal Practice & Procedure § 1376 (3d ed.)).

### B. *Group Pleading*

"Group pleading . . . attributes allegations to a subset of defendants rather than to a particular defendant." *Navient Sols., LLC v. Law Offs. of Jeffrey Lohman*, No. 1:19-cv-461, 2020 WL 1867939, at *7 (E.D. Va. Apr. 14, 2020) (internal quotations omitted). So long as it is "plausible that each defendant was involved in all of the facts alleged[,]" group pleading is permissible. *McPherson v. Baltimore Police Dep't.*, 494 F. Supp. 3d 269. 280 (D. Md. 2020) (internal quotations omitted). In the instant matter, the Complaint begins by alleging "Defendant Justin Faris and John Does illegally entered [the News'] residence in violation of [their] constitutional rights." [ECF 1 ¶ 1]. While the allegations that follow refer to these individuals collectively as "Defendants" or "officers," it is apparent the News are alleging Sheriff Faris was involved in the entirety of the alleged misconduct. Indeed, the News have alleged both Sheriff Faris and the Doe Defendants (1) entered their residence without a search warrant or arrest warrant for anyone residing therein, (2) lacked a lawful basis to detain them, and (3) utilized excessive and unnecessary force by holding them at gunpoint and repeatedly threatening them with harm and arrest. [*Id*. ¶¶ 1, 6, 7, 11, 12].

Simply put, it is not implausible that both Sheriff Faris and the Doe Defendants took part in the conduct alleged. The Complaint alleges sufficient facts to put Sheriff Faris on notice of the claims against him, and the allegations contained therein are not so vague and ambiguous to hinder a response. Sheriff Faris' detailed briefings in support of his Motion reflect

as much. The News' usage of group pleading is thus not a proper basis to support dismissal under these circumstances, nor is there a basis to require them to submit a more definite statement pursuant to Rule 12(e). To the extent Sheriff Faris contends the News' pleading of both a Section 1983 claim and *Bivens* claim pursuant to the same underlying facts warrants a more definite statement, such contention is meritless. Rule 8 permits plaintiffs to plead alternative theories of liability, and it is apparent from the Complaint that the *Bivens* claim is alternatively pled should discovery reveal Sheriff Faris and/or the Doe Defendants were acting as agents of a federal task force, rather than local law enforcement at the time of the incident.

### C.   *Qualified Immunity*

Title 42 U.S.C. § 1983 governs actions against state officers arising from their deprivations of constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law.

42 U.S.C. § 1983. A state actor sued in his individual capacity for monetary damages generally qualifies as a suable "person" under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Nonetheless, he may be entitled to qualified immunity. "'Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The immunity balances two important interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability

when they perform their duties reasonably.'" *Id*. (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity is thus available only to those who do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Garrett v. Clarke*, 74 F.4th 579, 583 (4th Cir. 2023). The qualified immunity inquiry is two-fold: the court must determine (1) "whether a constitutional right would have been violated on the facts alleged," and (2) whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The court has discretion to decide which of the two steps to address first based on the facts and circumstances of the case at hand. *Pearson*, 555 U.S. at 236.

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (cleaned up); *see D.C. v. Wesby*, 583 U.S. 48, 63 (2018); *Garrett*, 74 F.4th at 584. "To determine if the right in question was clearly established, we first look to cases from the Supreme Court, th[e] Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 99 (4th Cir. 2017) (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)); *Franklin v. City of Charlotte*, 64 F.4th 519 (4th Cir. 2023). Absent "directly on-point, binding authority," courts may also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Booker v. South Carolina Dep't of Corrections*, 855 F.3d 533, 543 (4th Cir. 2017); *Owens*, 372 F.3d at 279. In sum, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

While "[t]he question of whether a right is clearly established is a question of law for the court to decide[,] . . . [t]he question of whether a reasonable officer would have known that

8

the conduct at issue violated that right . . . cannot be decided prior to trial if disputes of facts exist." *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020) (citing *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015)). In other words, although "the purely legal question of whether the constitutional right at issue was clearly established is always capable of decision . . . on a motion to dismiss, a genuine question of material fact regarding whether the conduct allegedly violative of the right actually occurred must be reserved for trial." *Id*. (cleaned up) (internal quotations and citations omitted).

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Brinkley*, 980 F.3d 377, 383 (4th Cir. 2020) (quoting U.S. Const., amend. IV.). "In most cases, a search or seizure is unreasonable unless authorized by a warrant." *Id*. "The warrant requirement carries special force when police seek to enter a private home, which is 'afforded the most stringent Fourth Amendment protection.'" *Id*. (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)). "'With few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no.'" *Id*. at 383-84 (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)). Nonetheless, "[i]n some circumstances, an arrest warrant can . . . allow officers to enter a home in order to apprehend a suspect." *Id*. at 384. When police officers seek to enter a home armed with an arrest warrant, "the Fourth Amendment imposes specific and different requirements for entry based on whether the home is the suspect's own residence or someone else's." *Id*.

Where officers are attempting to execute an arrest warrant at the suspect's own residence, the Supreme Court has held "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives where there is reason to believe the suspect is within." *Payton v. New York*,

445 U.S. 573, 100 (1980). Our Court of Appeals has interpreted *Payton's* "reasonable belief" standard as the equivalent of probable cause. *Brinkley*, 980 F.3d at 386 (holding "reasonable belief in the *Payton* context embodies the same standard of reasonableness inherent in probable cause.") (internal quotations omitted)).

When the home of a third party is involved, however, the Supreme Court has deemed an arrest warrant insufficient to enter the third-party residence given the "two distinct interests" implicated by the Fourth Amendment at issue: the suspect's "interest in being free an unreasonable seizure," as well as the third party's "interest in being free from an unreasonable search." *Steagald v. United States*, 451 U.S. 204, 216 (1981). Although an arrest warrant is sufficient to protect the former interest, it fails to protect the latter's "privacy interest in being from an unreasonable invasion and search of his home." *Id*. The Supreme Court thus "held that, absent exigent circumstances or consent, the Fourth Amendment requires police to obtain a search warrant before trying to apprehend the subject of an arrest warrant in a third party's home." *Brinkley*, 980 F.3d at 384 (citing *Steagald*, 451 U.S. at 216).

Against this landscape, Sheriff Faris contends he is entitled to qualified immunity on the News' warrantless search claim inasmuch as he possessed a capias for the arrest of the News' son, Ralph Shaun New, whom he reasonably believed resided at his parent's residence, thus rendering his conduct constitutional under *Payton*. In support of this contention, Sheriff Faris relies on (1) the Circuit Court of Raleigh County's November 21, 2020, Order issuing the capias given Mr. New's failure to appear and its July 29, 2021, Order Maintaining Capias, and (2) a January 21, 2015, Criminal Complaint from the Magistrate Court of Raleigh County against Mr. New for domestic assault purportedly listing his parent's address as his own, both of which Sheriff Faris attaches to his Motion. [ECF Nos. 11-1, 11-2]. The News, of course, deny any assertion that their

son resided at their residence at the time of the incident[3] and maintain Sheriff Fairs lacked "a search warrant, or an arrest warrant for anyone residing in the home or any other basis to enter [their] residence or to detain [them]." [ECF 1 ¶ 1].

Even assuming the Court could consider the documents relied upon by Sheriff Faris at this stage, they are of little value inasmuch as the addresses provided thereon are redacted. [*See id*.]. Moreover, it is noteworthy that while the Circuit Court of Raleigh County's capias Orders were issued prior to the date of the incident at issue, the actual capias attached thereto is dated March 22, 2022, six months *after* Sheriff Faris' entry into the New residence. [ECF 11-1 at 3]. It is thus impossible to determine whether Sheriff Faris was acting pursuant to a valid capias and/or operating under the reasonable belief that Mr. New resided at his parent's residence when he entered their home in attempts to execute the same. Accordingly, it is apparent that disputed facts exist, precluding a grant of qualified immunity at this stage.

Furthermore, inasmuch as the reasonableness of Sheriff Faris' actions respecting the News' unlawful detention and excessive force claims hinge upon the legality of his entry into their residence, his entitlement to qualified immunity thereon is likewise inappropriate.

### III.

Based on the foregoing discussion, Sheriff Faris' Motion to Dismiss or Alternative Motion for More Definite Statement [**ECF 11**] is **DENIED**.

---

[3] The News provided an affidavit to this effect, attaching the same to their response. [ECF 13-1].

11

The Clerk is directed to send a copy of the written opinion and order to counsel of record and to any unrepresented party.

ENTER: September 16, 2024

Frank W. Volk
Chief United States District Judge